## WESLEY R. WHITAKER v. HARRIS H. ELLIOTT.

The Constitution provides that "no property shall be exempt from sale for taxes or for the payment of obligations contracted for the payment of said premises:" *Therefore*, where A sold and conveyed to B a tract of land, taking in payment therefor notes of C payable to B, and by him endorsed to A: *Held*, that this was an obligation within the meaning of the provisions of the Constitution, and as against a judgment obtained upon the notes, B was not entitled to a homestead.

SETTLE, J., *dissenting*.

CIVIL ACTION, to recover the possession of land, tried before *Schenck, J.*, at Spring Term, 1875, RUTHERFORD Superior Court.

The plaintiff introduced a transcript of the Superior Court of Henderson, showing a judgment in favor of Solomon Whitaker against H. H. Elliott, the defendant, dated Oct. 19th, 1863. It was also in evidence that the land in controversy had been sold under execution issuing upon the judgment in September, 1870. The deed from the sheriff made in pursuance of the execution was also proved. The defendant was in possession at the time of the sale, and also at the commencement of this suit.

The judgment in pursuance of which the land was sold was obtained upon a note for $100, given by S. Wilkins to the defendant for borrowed money, and endorsed by Elliott to the plaintiff, and by the plaintiff to Solomon Whitaker. The plaintiff testified, that in November, 1860, he sold and conveyed the land in controversy to Elliott. In February, 1860, he had sold Elliott some corn and fodder amounting to about sixty dollars, which had not been paid for when the land in controversy was sold in November of the same year. When he sold and conveyed the land to Elliott, the price agreed upon was $800, which he paid in notes which he held against Wilkins, by endorsing the notes to plaintiff. These notes in the aggregate amounted to $812, and the excess over and above the price of the land, by agreement, was allowed as a credit

on the account for the corn and fodder. The judgment under which the land was sold was obtained upon one of the notes endorsed to the plaintiff by the defendant in payment for the land, as endorsee. The sheriff laid off a homestead for plaintiff when he sold the land, which was all that defendant owned, and was only worth about $600. The defendant did not own sufficient personal property to pay the debt, and none subject to execution.

1. The plaintiff insisted that the judgment being obtained on the endorsement of Elliott on the Wilkins note, which he endorsed in payment for the land, the defendant was not entitled to a homestead against the judgment.

2. The endorsement being made prior to 1868, and being an old debt the defendant was not entitled to a homestead against it.

The Court instructed the jury that the plaintiff was not entitled to recover. There was a verdict and judgment for the defendant, and the plaintiff appealed.

*Jones & Jones, Churchill* and *Whitesides,* for the appellant.
*Shipp & Bailey* and *Hoke,* contra.

BYNUM, J. The case is this: In 1860, the plaintiff sold and conveyed the lands in dispute, to the defendant, and in payment therefor, took from him the notes of one Samuel Wilkins, which were payable to the defendant and by him endorsed to the plaintiff. A judgment was obtained against Elliott on one of these notes in 1868, and execution was levied upon the land after the adoption of the present Constitution, and the land was sold under a *ven. ex.* in 1870, and purchased by the plaintiff, who brings this action to recover possession under his said purchase and the sheriff's deed. The defendant claims a right of homestead in the land; and whether he is entitled to it, is the question.

*Art.* 10, *sec.* 2, of the Constitution provides, "That every homestead and the dwelling and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the

owner thereof," &c.,  *  *  *  *  "shall be exempt from sale under execution or other final process obtained on any debt. But no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises." This language of the Constitution is so unambigous and plain, that the only enquiry left to us is, was this note on which the judgment was rendered and the land sold, "an obligation contracted for the purchase of the premises," by the defendant ?

In the construction of a State Constitution, words are not to be taken in a narrow and technical sense, but in a general and popular sense, so as to give effect to the intent of the people in adopting it. The word "obligation" as here used, therefore means a debt contracted to be paid, or a duty to be performed by the purchaser, as the consideration of the purchase of the premises.

If the plaintiff had accepted the notes of Wilkins, without endorsement, the land would have been paid for as effectually as if he had received the entire consideration in cash. But when he required as a part of the trade, that the defendant should endorse the notes, and they were accordingly so endorsed by him, then the notes were not received as cash, but as the "obligations" of the defendant as well as of Wilkins. The transaction is the same in effect, as if the plaintiff had sold the land to the defendant, taking the joint notes of Wilkins and himself for the purchase money. The case then falls directly within the restriction of the Constitution, excluding him from a homestead which he has not paid for, and of which, therefore, he is not the "owner" as against the obligation contracted for its purchase. The principle is a salutary one, and founded on the highest degree of morality and good faith.

There is error. Judgment reversed, and judgment for the plaintiff.

PER CURIAM.                    Judgment accordingly.

SETTLE, J.  Dissents.