JOSEPH PLATT AND J. M. CHANCY, APPELLANTS, v. W. N. PLATT, APPELLEE.

1. While the exception in the constitution rendering a homestead liable for an obligation contracted for the purchase of said property must be strictly construed, yet the term used must not be so construed as to render it meaningless or nugatory. Most assuredly must we refuse to so interpret or construe the exception as to aid in the perpetration of a fraud.

2. The meaning of the word "obligations" as used in Section 1 of Article 10 of the Constitution is a debt contracted to be paid, or a duty to be performed by the purchaser as the consideration of the purchase of the property.

3.   A partner who purchases the partnership assets, paying
     therefor some cash and assuming the partnership debts,
     when sued by the retiring partner for failure to pay
     these debts cannot claim an "exemption" out of the assets
     as against this equity.

This case was decided by Division A.

Appeal from the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the
Court.

*Ira J. Carter,* for Appellants.

*W. B. Davis,* for Appellee.

SHACKLEFORD, C. J.   This is a suit in equity instituted
in the Circuit Court for Taylor county by the appellee
against the appellants.   The bill in substance alleges that
the appellee and Joseph Platt, one of the appellants, were
co-partners in the general merchandise business in the
town of Perry, under the firm name of W. N. Platt &
Brother, until on or about the 23rd day of April, 1904,
when the appellee sold and transferred his entire interest
in said business to his partner, Joseph Platt, for and in
consideration of the sum of $490.00 in money and the
assumption by the said Joseph Platt of the entire indebt-
edness of the firm and relieving the appellee from any lia-
bility therefor; that said indebtedness amounted to about
$1800.00, of which amount said appellant had paid only
about $400.00, leaving a balance of about $1400.00 still
due and unpaid, for which the appellee was still held per-
sonally liable by the creditors of said firm; that said ap-
pellant took possession of said stock of merchandise on

the date he purchased same and continued in the possession and management of the business until on or about the 15th day of June, 1904, when fraudulently and with the intent to defraud appellee and the creditors of the firm said appellant executed a bill of sale to all of said merchandise to M. J. Platt, the mother of said appellant, a widow and entirely without means, and there being no consideration paid for the same; that said appellant still remained in possession of the stock of goods after the pretended sale, managing and conducting the same, though in the name of M. J. Platt, who however knew nothing about the business and had nothing to do with it, until on or about the 14th day of July, 1904, when the said appellant, for the further purpose of defrauding appellee and the creditors of the firm, made a pretended sale of the business to J. M. Chancy, the other appellant, and had M. J. Platt execute a bill of sale therefor to said Chancy, which sale, however, was without any consideration and was only a sham and a pretense, said Chancy never taking possession of the business but Joseph Platt continuing to conduct and manage the same; that Joseph Platt is insolvent, having no real estate and no visible personal property and that any judgment obtained against him would be worthless. The prayer of the bill in substance is that the stock of merchandise be declared subject to and liable for the debts of the former firm of W. N. Platt & Brother, that a receiver be appointed to take charge of and convert the same into cash, the proceeds of the sale thereof be applied to the payment of the firm indebtedness, and for general relief.

The appellants filed separate answers, J. M. Chancy admitting in his answer that the sale to him was only conditional and was made in order that Joseph Platt might be able to realize money upon the obligation of said

Chancy or otherwise with which to pay creditors of the old firm of W. N. Platt & Brother, who were pressing for their money, that Joseph Platt had failed to so realize as he anticipated and on the 28th day of July, 1904, said Chancy had executed a bill of sale to Joseph Platt to all of said property, thereby re-investing the title thereto in him.

The separate answer filed by Joseph Platt contains in substance the same averments as appear in the answer of Chancy, and, in addition thereto, an admission that the sale made by said appellant to his mother, M. J. Platt, was without consideration but in order that Joseph Platt might gain time within which to raise money to pay the creditors of the old firm, who were pressing him. The answer also contains other averments which were virtually admissions of other material allegations in the bill, though it denies any and all fraudulent intent. The answer contains a further averment to the effect that respondent is the head of a family residing in this State and that as such head he is entitled to claim and have exempt to him $1000.00 worth of personal property as his exemption under the constitution and laws of Florida, which he seeks to have allotted to him out of said stock of merchandise, avering that he has no other property whatever of any kind or character either in the State of Florida or elsewhere.

On the 19th day of July, 1904, the Circuit Judge made an order appointing J. O. Culpepper a receiver to take charge of the stock of merchandise and sell and dispose of the same to the best advantage, requiring said receiver to file a bond in the sum of $2200.00, with proper conditions, and sufficient sureties to be approved by the Clerk of the Circuit Court, and further ordering the receiver to turn

over to Joseph Platt said stock of merchandise, provided said Platt should enter into a bond in the sum of $2000.00 with good and sufficient sureties payable to W. N. Platt and conditioned to pay all the indebtedness of the firm of W. N. Platt & Brother. W. N. Platt was also required to give a bond in the sum of $2200.00, with good and sufficient sureties conditioned to save the defendants harmless from all damages they might sustain.

The appellee and the receiver filed their respective bonds in accordance with the order, but Joseph Platt failed to file any bond, so the property remained in the possession of the receiver.

The appellants also filed a motion seeking to have the order appointing the receiver dissolved or modified to the extent of awarding to Joseph Platt out of the stock of goods in the hands of the receiver $1000.00 worth as his exemption under the constitution and accompanied said motion with various and sundry affidavits and papers. This motion came on to be heard, in the absence of the Judge of the Third Circuit, before the Judge of the Fifth Circuit, who made an order refusing at that time to dissolve or modify the order as sought by appellants and continuing the same until the final hearing.

A replication was filed to the two answers, an examiner was appointed to take the testimony, which testimony was so taken and a final decree was rendered by the Judge of the Third Circuit, finding all the equities in favor of the original complaint and that said property in the hands of the receiver was subject to the payment of the liabilities of the firm of W. N. Platt & Brother and denying the claim of Joseph Platt to an exemption therein.

Appellants have entered their appeal from this decree, making the same returnable to the present term of this

court. Three errors are assigned, but the only real question presented to us for consideration and determination is whether or not the court erred in denying to Joseph Platt the right to have $1000.00 worth of the goods in the hands of the receiver set aside as his exemption under the constitution.

Section 1 of Article 10 of the Constitution of 1885, after providing for the exemption of a homestead together with one thousand dollars worth of personal property by the head of a family residing in this State from forced sale under process of any court, contains this further provision: "But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same."

As we said in Wilhelm v. Locklar, 46 Fla. 575, 35 South. Rep. 6, in discussing the question what constituted "obligations contracted for the purchase of said property," "A strict construction must, therefore, be given to this exception," and we declined to extend the terms, beyond what we conceived the words so used to ordinarily mean. However, the facts in the instant case are very different from those in the cited case, and while we are unwilling to extend the terms we are equally as unwilling to so contract them as to render them meaningless or nugatory. Most assuredly must we refuse to so interpret or construe them as to aid in the perperation of a fraud. Drucker v. Rosenstein, 19 Fla. 191; Smith v. Guckenheimer, 42 Fla. 1, text 41, 27 South. Rep. 900; Florida Loan & Trust Co. v. Crabb, 45 Fla. 306, 33 South. Rep. 523. The record in the instant case clearly discloses that

Joseph Platt, for and in consideration of the transfer to him by his brother and partner, W. N. Platt, of his entire interest in the partnership business of W. N. Platt & Brother, contracted with and agreed to pay to W. N. Platt the sum of $490.00 in money and to assume the payment of the entire indebtedness of the firm and thereby relieve W. N. Platt from any liability therefor. W. N. Platt fully performed his part of the contract, but Joseph Platt has only partially performed his part thereof, making the cash payment of $490.00 and paying a small portion of the firm indebtedness. He now seeks to avoid and evade the further payment of consideration of the contract by availing himself of the beneficent homestead and exemption provisions of our Constitution. To permit this to be done would, in our opinion, be inequitable and would narrow the meaning of the word "obligations" to a degree never contemplated or intended by the makers of our constitution. The assumption and payment of the indebtedness of the firm by Joseph Platt were just as obligatory upon him and constituted as much of an obligation for the purchase of said property as the cash payment by him of $490.00. See Porter v. Teate, 17 Fla. 813, text 816, *et seq.,* quoting and approving Whitaker v. Elliott, 73 N. C. 186, which cited case is very much in point in the instant case. It was said therein, "The word 'obligation,' as here used, means a debt contracted to be paid, or a duty to be performed by the purchaser as the consideration of the purchase of the premises. * * * The case, then falls directly within the restriction of the constitution excluding him from homestead which he has not paid for, and of which, therefore, he is not the owner as against the obligation contracted for its purchase. The principle is a salutary one and founded on the highest degree of morality and good faith." Also see Fox v.

Brooks, 88 N. C. 234, text 236, following and approving Whitaker v. Elliott, *supra*, as to the construction of the term, obligation.

The decree must be affirmed, and it is so ordered, at the cost of appellants.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.